**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karen Malherek, | No. CV-18-00409-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

On June 5, 2019, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 16) in which he recommended this Court affirm the decision of the Administrative Law Judge ("ALJ"). Plaintiff Karen Malherek has filed an Objection (Doc. 17) and Andrew M. Saul (the "Commissioner") a Reply (Doc. 18).

*1. Standard of Review*

The Court has reviewed Plaintiff's Complaint (Doc. 1), the Commissioner's Answer (Doc. 11), Plaintiff's Opening Brief (Doc. 13), the Commissioner's Response Brief (Doc. 14), Plaintiff's Reply Brief (Doc. 15), the R&R (Doc. 16), Plaintiff's Objection (Doc. 17), and the Commissioner's Reply to Objection (Doc. 18). The R&R summarizes that Plaintiff seeks to invalidate the ALJ's determinations relating to her disability. Plaintiff alleges that the ALJ's determination that she could sit or stand for two-hour intervals was not supported by substantial evidence and that the ALJ failed to provide a reasoned evaluation of her statements. The Magistrate Judge recommends this Court reject Plaintiff's allegations and affirm the decision of the ALJ.

The standard of review that is applied to a magistrate judge's report and recommendation is dependent upon whether a party files objections – the Court need not review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

Generally, the findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g). A decision "to deny benefits will be overturned only if it is not supported by substantial evidence or it is based on legal error." *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). The standard is "more than a mere scintilla but is less than a preponderance." *Matney*, 981 F.2d at 1019 (internal citations and quotations omitted).

*2. Objections*

*A. Dr. Jeri B. Hassman's Opinion*

Plaintiff alleges that the ALJ erroneously disregarded Dr. Hassman's medical opinion. *See* (Doc. 17, pg. 2) ("Ms. Malherek showed that substantial evidence does not support the ALJ's finding that she could sit two hours at a time because the ALJ erroneously failed to acknowledge and to evaluate Dr. Hassman's opinion that, prior to Ms. Malherek's December 31, 2012 date last insured, she could sit only thirty minutes at a time."). Plaintiff's objection is unfounded. The ALJ's decision to assign a lesser weight to Dr. Hassman's opinion was proper.

In February 2012, Dr. Bennet Davis examined Plaintiff and determined that Plaintiff hard normal strength, gait, and range of motion in her lumbar spine with minimal pain. (Doc 12-8, pg. 163). Dr. Davis also determined that Plaintiff could rise from a chair without

the use of assistance and could position herself without difficulty on the examination table. *Id.* In contrast, Dr. Hassman performed an in-person evaluation of the Plaintiff in March 2016. This evaluation was intended to determine Plaintiff's physical condition in 2012. In that evaluation, Dr. Hassman determined that Plaintiff, in 2012, could sit for thirty minutes at a time and for five hours total. (Doc. 17, pg. 2). Dr. Hassman also determined that Plaintiff could stand for fifteen minutes at a time and for one- and one-half hours total. *Id.* Although Dr. Hassman's opinion was rendered in 2016 and is retrospective, "it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (internal citation omitted). Furthermore, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995), as amended (Apr. 9, 1996) (internal citations and quotations omitted).

However, in this case, the ALJ did not assign less weight to Dr. Hassman's opinion "solely" because it was retrospective. In addition, Dr. Hassman's opinion was not uncontradicted. Dr. Hassman's opinion was afforded less weight because her examination occurred four years after Plaintiff's date last insured and was inconsistent with the findings of Dr. Davis. In the ALJ's opinion, she states:

> The opinion of Dr. Hassman has been given reduced weight as her examination was performed nearly 4 years after the claimant's date last insured and was not consistent with the objective evidence from the time of the claimant's alleged onset date through her date last insured. Although Dr. Hassman opined Ms. Malherek's established onset date would be when she established care with Dr. Davis in February 2012, her limitations were not consistent with his clinical findings.

(Doc. 12-3, pg. 26).

During Dr. Davis's February 2012 examination, he reported that Plaintiff showed normal posture and had full range of motion "of the lumbar spine . . . with minimal pain." (Doc. 12-8, pg. 163). Dr. Davis reported that Plaintiff could perform deep knee bends and had normal strength and normal gait. *Id.* Dr. Davis also reported that Plaintiff was not in "acute distress," that he "observed no exaggerated or inconsistent pain-related behaviors," and that Plaintiff's "[p]osture was normal." *Id.* In sum, Dr. Hassman's conclusions were in direct contravention of Dr. Davis's findings. Given that Dr. Davis issued his findings in 2012 and that Dr. Hassman's opinion is post-dated by four years, the ALJ acted reasonably in assigning a reduced weight to Dr. Hassman's opinion. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### B. Lay Witness Statements

Plaintiff further objects to the ALJ's rejection of allegedly corroborating lay-witness statements made by Plaintiff's children regarding Plaintiff's physical condition. More specifically, Plaintiff cites *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) as controlling and alleges that the "Magistrate Judge also unreasonably recommended finding that a flawed rejection corroborating lay-witness statements is harmless because the statements are corroborating. Supporting evidence does not lack probative value because it is supportive." (Doc. 17, pg. 5).

Ordinarily, "[i]f an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness." *Bruce*, 557 F.3d at 1115 (internal quotations and citation omitted). "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Here, the ALJ properly disregarded the testimony of Plaintiff's lay witnesses. With respect to Plaintiff's son Jacob Malherek's testimony, the ALJ wrote that "the statement of the claimant's son is given some weight; however, the level of the claimant's functioning described by Mr. Malherek is not supported by the weight of overall objective evidence of

record from the alleged onset date through the date last insured. For example, the above records indicated mild diagnostic findings, with examination notes indicated normal range of motion of all extremities and normal ambulation." (Doc. 12-3, pg. 25).

Similarly, while addressing Plaintiff's daughter's testimony, the ALJ wrote that "the statement of the claimant's daughter is given some weight; however, the level of the claimant's functioning described is not supported by the weight of overall objective evidence of record from the alleged onset date through the date last insured. For example, the above records indicated mild degenerative disc disease with sacroiliac joint dysfunction. Treatment records further showed that Ms. Malherek was able to perform yard work and exercise regularly." *Id.* (internal citations omitted). The ALJ examined the record, discovered multiple instances of contradictory evidence and properly discounted Plaintiff's lay witness testimony on those grounds. Since the ALJ provided a sufficient justification for a reduced credibility determination for Plaintiff's lay witnesses, the ALJ's decision to assign a lesser weight to those lay witnesses was proper.

### C. Inconsistent Statements

Plaintiff also objects to the ALJ's determination that she "made inconsistent statements about her ability to stand." (Doc. 17, pg. 7). In furtherance of that argument, Plaintiff states that "the Magistrate Judge did not identify any activity in which Ms. Malherek engaged that involved standing more than fifteen minutes at a time. At most, the Magistrate Judge implied that Ms. Malherek either hinted that she stood more than fifteen minutes at a time or that her activities must have involved standing that long." *Id.* at 8 (internal citation omitted). In 2017, Plaintiff testified before Administrative Law Judge Laura Speck Havens. In response to the question of whether Plaintiff could cook for herself while she was disabled, Plaintiff responded that she "couldn't stand long enough to finish" chopping vegetables. (Doc. 12-3, pg. 63). Plaintiff further stated that she "would try sitting at the table and doing it, but that hurt. And it just got that I had so many things that got ruined, because I had to go lay down, because I was afraid I was going to pass out." *Id.* Plaintiff also testified that due to her disability, "standing was a huge problem." *Id.* at 71.

Despite this testimony discussing Plaintiff's physical condition, the record is replete with instances of Plaintiff providing contradictory information to her doctors. For instance, on December 28, 2010, nearly one month after Plaintiff's disability date[1], Dr. Lee Goldberg noted that Plaintiff "is able to exercise frequently without any problems." (Doc. 12-8, pg. 28). Furthermore, in May 2011, Dr. Elizabeth Kronlage noted that Plaintiff exercises, uses the treadmill, and does "a lot of yardwork." (Doc. 12-9, pg. 147). An ALJ is permitted to utilize a variety of factors to assess credibility including "whether the claimant engages in daily activities inconsistent with the alleged symptoms…" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Although Plaintiff testified that her disability had a start date of December 1, 2010, with pain so severe that she could not stand long enough to prepare her own meals, she informed her healthcare providers, on multiple occasions, that she exercised and performed yardwork. The ALJ properly evaluated Plaintiff's inconsistent statements and activities with respect to her ability to stand and the Magistrate Judge did not err in affirming the ALJ.

*D. Mental Limitations*

Plaintiff objects to the ALJ's decision to fail to consider Plaintiff's mild mental limitation when making her residual functional capacity ("RFC") assessment. An RFC assessment is an assessment of the capabilities and limitations of an individual seeking disability status. Prior to the Plaintiff's RFC assessment, the ALJ considered four broad areas of mental functioning and determined that Plaintiff had mild mental limitations. *See* (Doc. 12-3, pg. 19). Despite that acknowledgment, Plaintiff claims that the ALJ neglected to consider her mental limitation when determining her RFC. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal citations and quotations omitted).

---

[1] Plaintiff listed the date which she became disabled as December 1, 2010. (Doc. 12-3, pg. 60).

Plaintiff's objection stems from the ALJ's lack of specific reference to Plaintiff's mild mental limitation in the RFC. Plaintiff argues that there is no "rational explanation for the disappearance of Ms. Malherek's mild mental limitations when her residual functional capacity was determined . . . The Court should reject [sic] Magistrate Judge's recommendation to hold that recognized mild mental limitations need not be accounted for in an ALJ's residual functional capacity assessment when at issue is semi-skilled work." (Doc. 17, pg. 9). However, contrary to Plaintiff's argument, the Magistrate Judge did not hold that Plaintiff's mild mental limitation was not accounted for in the RFC. On the contrary, the Magistrate Judge explicitly stated that in formulating the RFC, "the ALJ thoroughly considered Malherek's mild limitations in the four broad areas of mental functioning." (Doc. 16, pg. 12).

Plaintiff's argument is solely predicated upon the fact that the ALJ did not specifically mention her mild mental limitation when determining her RFC. However, the ALJ explicitly stated that all the Plaintiff's impairments were considered when determining her RFC. *See* (Doc. 12-3, pg. 27) ("The claimant's impairments were considered singly and in combination, but do not significantly limited [sic] the claimant's ability to perform basic work activities."). The ALJ did not err by electing not to devote a specific section to discuss Plaintiff's mild mental impairment in her RFC. An ALJ is required only "to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under [a specific] heading." *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001).

However, even if the ALJ had neglected to include Plaintiff's mild mental limitation in her RFC analysis, that error would be harmless. Plaintiff's argument is only that the ALJ did not discuss her mild mental limitation, not that her mild mental limitation would prevent her from performing work as a medical records clerk or receptionist. Plaintiff lodged no objection to the ALJ's determination of her depression as "non-severe." (Doc. 12-3, pg. 19). A non-severe limitation by its very definition has nothing "more than a minimal limitation" on Plaintiff's "ability to do basic work activities." 20 C.F.R. §

416.920a(d)(1). Furthermore, a mild mental limitation can present "no significant interference with the ability to perform basic work-related activities." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Ultimately, any error that does not affect the ALJ's conclusion is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (Harmless error is found when an ALJ's error is "inconsequential to the ultimate nondisability determination.").

Accordingly, IT IS ORDERED:

1. The R&R is **adopted in full** and the decision of the Administrative Law Judge is affirmed.

2. The Clerk of Court is directed to close its file in this matter.

Dated this 26th day of September, 2019.

Honorable Cindy K. Jorgenson
United States District Judge